## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| WILSON C. GALLUP, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 2:19-cv-00003 SRC |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on Plaintiff Wilson Gallup's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Gallup's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The Court affirms the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Gallup filed his application for SSI on May 7, 2015. Tr. 87. The Social Security Administration initially denied his application on August 5, 2015. Tr. 88. Gallup asked for a hearing before an ALJ on September 28, 2015 and on November 10, 2015, and the ALJ held a hearing on January 26, 2017. Tr. 95, 109; Doc. 20-3. The ALJ held a supplemental hearing on September 14, 2017. Tr. 32. The ALJ denied Gallup's application in a decision dated May 9, 2018. Tr. 7-24. On December 13, 2018, the Appeals Council denied Gallup's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] After this suit was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Saul for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## II.    DECISION OF THE ALJ

The ALJ determined that Gallup has not engaged in substantial gainful activity since May 7, 2015, the application date.  Tr. 12.  The ALJ found Gallup has severe impairments of right knee medial collateral ligament (MCL), osteoarthritis, and insufficient anterior cruciate ligament (ACL) status post arthroscopic surgery; generalized anxiety disorder; post-traumatic stress disorder (PTSD); panic disorder; and major depressive disorder (MDD).  Tr. 12.  The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 13.  After considering the entire record, the ALJ determined that before August 1, 2017, Gallup had the residual functional capacity ("RFC") to perform sedentary work with the following limitations. Tr. 16.  He can never climb ladders, ropes or scaffolds.  *Id*.  He can occasionally climb ramps or stairs and balance, stoop, kneel, crouch, or crawl.  *Id*.  He must avoid concentrated exposure to extreme cold, wetness, humidity, excessive vibration such as a jackhammer, dangerous machinery, unprotected heights, or pulmonary irritants such as fumes, odors, dusts, or gases.  *Id*. He can perform "work limited simple routine tasks" and can have no more than occasional interaction with coworkers, supervisors, or the public.  *Id*.  The ALJ found that beginning on August 1, 2017, in addition to the above-listed limitations, he must be allowed to use a cane to ambulate.  *Id*.

The ALJ found Gallup has no past relevant work, and that Gallup was 44 years old on the date the application was filed which is defined as a "younger individual age 18-44."  *Id*. at 22. She found he has a marginal education and is able to communicate in English.  After considering Gallup's age, education, work experience, and RFC, she found that jobs exist in significant numbers in the national economy that Gallup can perform including production assembler,

vehicle driver, and office clerk.  Tr. 23.  Thus, the ALJ concluded that Gallup "has not been under a disability."  Tr. 24.  Gallup appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III.   LEGAL STANDARD

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

3

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations."  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id.*  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**IV.    DISCUSSION**

    **A.    RFC Determination**

Gallup challenges the ALJ's RFC determination asserting substantial evidence does not support it.  Specifically, he challenges the ALJ's finding that he can occasionally interact with coworkers, supervisors, or the public.  Gallup argues the ALJ gave too much weight to Linda Skolnick's opinion, and not enough weight to Dr. Jeffrey Jenkins and Mark Schmitz's opinions, who actually examined Gallup.

In making her determination that Gallup can occasionally interact with coworkers, supervisors, and the public, the ALJ considered Gallup's own testimony, his medical records, and the opinions of Linda Skolnick, a non-examining state-agency psychological consultant, Dr. Jeffrey Jenkins, Gallup's psychiatrist, and Mark Schmitz, a consultative examiner.

The ALJ discounted Gallup's testimony, finding that the objective medical evidence generally supports his testimony, but it does not support it as to the intensity, persistence, and limiting effect of his symptoms.  Tr. 17, 18.  The ALJ found the record indicated Gallup was diagnosed with depression, major depressive disorder, post-traumatic stress disorder, alcohol dependence full sustained remission, anxiety disorder not otherwise specified, generalized anxiety disorder, and panic disorder.  Tr. 18.  The ALJ considered Gallup's psychological symptoms and their effect on his functioning together and noted that Gallup has no history of being hospitalized for a mental impairment and he has demonstrated no suicidal or homicidal ideation throughout the alleged period of disability.  Tr. 18.  The ALJ found that the objective medical evidence and Gallup's mental health treatment reflect some difficulties with social interactions but do not reflect an inability to interact with verbal and nonverbal communication or control his behavior.  Tr. 18-19.

6

i. **Linda Skolnick**

The ALJ gave the opinions of Linda Skolnick, a non-examining state-agency psychological consultant, considerable, but not full, weight.  She found Skolnick well versed in the Social Security Act and its regulations and that her opinions were generally consistent with the medical record as a whole, particularly Gallup's pattern of treatment and mental-status examinations.  Skolnick found that Gallup "appears to have a long history of problems getting along with others . . . However, the objective evidence does not fully support a disabling level of impairment. His limitations appear to be moderate." Tr. 79.  She also found him to be moderately limited in "the ability to work in coordination with or in proximity to others without being distracted by them," in his interaction with the general public, in his "ability to accept instructions and respond appropriately to criticism from supervisors," and his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. 84.

Gallup's sole argument as to the ALJ's reliance on Skolnick is that Skolnick gave her opinion in August 2015, approximately two years before Gallup's supplemental hearing in September 2017; thus, her opinion did not consider the treatment records from Dr. Jenkins during the ensuing time period.  Nothing in the Social Security regulations requires a report to be within a certain time period for an ALJ to rely on it.  *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").  Nor does legal authority require a consultant's medical opinion to be based on subsequently-created medical records for an ALJ to rely on it.  *Barker v. Colvin*, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority

which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records."). The medical record, at the time of her opinion, supports Skolnick's opinion and nothing in the record after her opinion alters the substance of her opinion. Thus, the ALJ properly relied on Skolnick's opinion. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [the] RFC.").

### ii.     Dr. Jeffrey Jenkins

The ALJ gave the opinions of Dr. Jeffrey Jenkins, Gallup's psychiatrist, limited weight. She found his opinions had extreme limitations not mentioned in his records of treatment and not supported by objective testing or reasoning. She also found that his treatment of Gallup was generally conservative; thus, not supporting his limitations. Finally, she stated his opinions consisted primarily of a standardized, check-the-box form without supporting reasoning or clinical findings.

In March 2016, Dr. Jenkins completed a "Mental Residual Capacity Form" for Gallup. Tr. 472-74. The form consists of a list of various mental abilities, and then boxes next to the list with different categories to check. *Id.* Dr. Jenkins checked that Gallup has a "Category III" limitation in the following areas: "carry out detailed instructions," "maintain attention and concentration for extended periods," and "make simple work-related decisions." *Id.* A "Category III" limitation precludes performance for ten percent of an eight hour work day. Tr. 472. Dr. Jenkins checked that Gallup has a "Category IV" limitation in the following areas: "work in coordination with or in proximity to others without being distracted by them," "complete a normal workday and workweek without interruptions from psychologically based

symptoms and perform at a consistent pace without an unreasonable number and length of rest periods," "ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness." Tr. 472-74. A "Category IV" limitation precludes performance for twenty percent of an eight hour workday. Tr. 472. Beyond Dr. Jenkins's checking of the boxes, the form does not include any other information. Tr. 472-74.

The record supports the ALJ's giving limited weight to Dr. Jenkins because his treatment notes do not support the severity of his opinion. Dr. Jenkins treated Gallup approximately 11 times from December 2015 to July 2017. After each visit, except for one, Dr. Jenkins's treatment notes state that Gallup was "awake, alert, calm, cooperative, socially appropriate, [and] fully oriented." Tr. 563, 565, 567, 569, 571, 573, 676, 678, 680, 682, 686. These same notes indicate he responded well to medication, and do not indicate any episodes of crisis or uncontrolled symptoms. *Id.* Only one of Dr. Jenkins's notes indicates any issues with interacting with others. When Dr. Jenkins treated Gallup in June 2017, he indicated Gallup "has been rude and verbally abusive to staff, he is to be cautioned such behavior is unacceptable and he needs to refrain from such outbursts if he wishes to continue to receive services with me." Tr. 684. However, Dr. Jenkins's records after that date do not indicate any further problems. Tr. 686-88.

The ALJ properly gave limited weight to Dr. Jenkins's opinion when it consisted of a "check the box" form without any reasoning and lacked medical-evidence support. *See Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) ("We have upheld an ALJ's decision to discount a

treating physician's [opinion] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records or treatment nor supported by any objective testing or reasoning."); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) ("A treating physician's opinion should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.").

### iii.    Mark Schmitz

The ALJ gave the opinions of Mark Schmitz, a consultative examiner, limited weight. Although Schmitz did a thorough examination of Gallup, the ALJ found his opinions only partially consistent with the record as a whole.  Specifically, she found his most restrictive limitation, that Gallup is markedly impaired in responding to work situations and interacting with supervisors and coworkers, not supported by Schmitz's examination notes, objective testing, or Gallup's pattern of treatment.

Schmitz filled out a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" and submitted his own psychological examination report. Tr. 749-56.  On the Medical Source Statement, Schmitz opines that Gallup has a "moderate" inability to "interact appropriately with the public" and a "marked" inability to "interact appropriately with supervisor(s)" or co-workers.  Tr. 749-50.  A "moderate" inability means "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair," while a "marked" inability means "functioning in this area independently, appropriately, effectively, and on a sustained basis is Seriously (sic) limited."  Tr. 749.  In support of his opinion, Schmitz notes, "depression and anxiety" and "irritability associated with depression."

In his psychological evaluation, he notes that Gallup maintained appropriate eye contact and had no unusual or bizarre behaviors or mannerisms, he responded to questions in "a relevant and goal directed manner," his speech was well-articulated and normal, and his "judgment was also considered to be within normal limits as indicated by his responses to hypothetical situations. Tr. 754-55. However, in his recommendations, he states his ability to interact appropriately with the public is moderately impaired while his ability to interact appropriately with supervisors and coworkers is likely to be markedly impaired. Tr. 756. His ultimate conclusion finds no support in the body of his opinion. Thus, the ALJ appropriately gave the Schmitz's opinions limited weight.

Gallup asserts that the ALJ's analysis of Schmitz's opinion makes little sense because she refers to a Dr. Burchett in the analysis. This appears to be a typo, with little effect on the substance of the ALJ's analysis. The Court will not remand this case on the basis of a simple typo. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("An arguable deficiency in opinion writing that has no practical effect on the decision is not a sufficient reason to set aside the ALJ's decision.").

Substantial evidence supports the ALJ's overall assessment of Gallup's RFC regarding his ability to interact with others. While his treatment records show in May 2015, he was irritable and snapping at people, and that he had been banned from the Family Health Center after "going off" on one of the employees, his treatment records with Dr. Jenkins over the following two years indicate he responded well to treatment and did not have continuing issues with irritability. Tr. 443, 446, 563-686. Gallup checked into the emergency room in September 2016 due to increased irritability and problems sleeping, but he was discharged the next day after

sleeping for six hours.  Tr. 523-46.  The medical record after that date indicates no additional incidents.

The ALJ properly based Gallup's RFC on all of the relevant evidence including the medical records, Dr. Jenkins's opinion, as well as Skolnick and Schmitz's opinions, and Gallup's own testimony.  *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his limitations].") (internal quotation omitted).  Her decision is supported by substantial evidence on the record as a whole.  *Id*. at 524 ("Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.").  Therefore, the Court affirms the decision.

**B.      Transcript of Hearing**

Gallup also argues the Court should remand this case because there was no transcript of Gallup's first hearing in January 2017.  The Commissioner supplemented the record in this case with the transcript from Gallup's first hearing.  Doc. 20.  Thus, Gallup's argument on this basis is now moot.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Wilson Gallup's Complaint is **DISMISSED, with prejudice**.  A separate judgment will accompany this Memorandum and Order.

So Ordered this 31st day of August, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**